ARARAT, INC., A CORPORATION OF THE STATE OF NEW
JERSEY, PLAINTIFF-APPELLANT, v. STATE OF NEW
JERSEY, DEPARTMENT OF ENVIRONMENTAL PROTEC-
TION (FORMERLY DEPARTMENT OF CONSERVATION
AND ECONOMIC DEVELOPMENT), DIVISION OF WATER
RESOURCES, WATER POLICY AND SUPPLY COUNCIL
AND HACKENSACK WATER COMPANY, DEFENDANTS-
RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued December 9, 1974—Decided February 4, 1975.

306

Before Judges LORA, LYNCH and HANDLER.

*Mr. Martin A. Nalbandian* argued the cause for appellant.

*Mr. William J. Stohler,* Deputy Attorney General, argued the cause for respondent (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney; *Mr. Stephen Skillman,* Assistant Attorney General, of counsel).

*Mr. Donald W. de Cordova* argued the cause for respondent Hackensack Water Company (*Messrs. Morrison & Griggs,* attorneys).

PER CURIAM. On March 15, 1967 defendant Hackensack Water Company (Hackensack) filed an application with the State of New Jersey, Department of Conservation & Economic Development, Division of Water Resources, for approval of the right to exercise the ower of eminent domain pursuant to *N. J. S. A.* 58:1–17 *et seq.* and *N. J. S. A.* 58:6–1 *et seq.,* affecting the lands of plaintiff-appellant, Ararat, Inc., in the Borough of Old Tappan. Hearings were held on July 14, 1967, September 5, 1967, and November 27, 1967, before the Water Policy & Supply Council (Council). The Council ultimately granted Hackensack's application and notified plaintiff by letter dated April 28, 1972.

On June 12, 1972 plaintiff filed an action in lieu of prerogative writs in the Superior Court, Law Division. The Attorney General, acting on behalf of the State, filed a motion to dismiss on the ground that the Law Division lacked jurisdiction over the subject matter. On July 18, 1972 the matter was transferred to the Superior Court, Appellate Division, in accordance with *R.* 1:13–4. On January 22, 1973 the matter was remanded upon the Attorney General's motion to the Council for the preparation of findings of fact and conclusions of law based on the existing record.

By letter dated April 4, 1973 plaintiff received a copy of the hearing examiner's report and filed a reply thereto on May 11, 1973. An amended final decision of the Council was sent to plaintiff on October 24, 1973.

▉ Plaintiff asserts that since the decision rendered by the Council was not made within the 60-day period prescribed in *N. J. S. A.* 58:1–21, the Council's decision is invalid. The State claims that the 60-day requirement is inapplicable because the present hearing was conducted pursuant to *N. J. S. A.* 58:6–1 *et seq.*

A distinction between *N. J. S. A.* 58:1–17 *et seq.* and *N. J. S. A.* 58:6–1 was recognized in *Juzek v. Hackensack Water Co.,* 48 *N. J.* 302, 313 (1966), wherein the court pointed out that the power of condemnation and approval for its exercise

are the primary concern of *N. J. S. A.* 58:6–1 *et seq.*, although proceedings for the approval of plans under *N. J. S. A.* 58: 1–18 and for condemnation are frequently combined.

We conclude, therefore, that the statutory 60-day requirement under *N. J. S. A.* 58:1–21 was not specifically applicable to this proceeding.

Plaintiff further claims that the decision by the Council is invalid since it was not filed in writing, as prescribed by *N. J. S. A.* 58:1–22, and did not state the grounds upon which it was based. Aside from the pertinency of that statutory provision, the issue was effectively mooted by the remand to the Council and its subsequent submission of findings of fact and conclusions of law.

Plaintiff argues that the Council's failure to notify plaintiff of any action or decision for four years and five months constitutes a violation of constitutional due process.

In no sense can the extreme delay which occurred in these proceedings be condoned. An administrative agency must notify the parties affected by its decision of its determination. *Cf. N. J. S. A.* 52:14B–10(d). Although the Council had a duty to notify the parties of its determination, plaintiff itself failed to request an earlier decision. *Irish v. S E C,* 367 *F.* 2d 637 (9 Cir. 1966), *cert.* den. 386 *U. S.* 911, 87 *S. Ct.* 860, 17 *L. Ed.* 2d 784 (1967); *cf. In re Emberton,* 109 *N. J. Super.* 211, 216 (App. Div. 1970). Moreover, it has not shown that it was prejudiced in any way by the delay. *Cf. In re Darcy,* 114 *N. J. Super.* 454, 462 (App. Div. 1971).

Plaintiff also complains of the Council's failure to furnish it with a copy of the hearing examiner's report so that exceptions could be filed prior to the final decision.

Plaintiff quite clearly should have been furnished with copies of the hearing examiner's report so that it could have filed its objections before the rendition of the final decision. On the remand of this case, however, the hearing examiner's report was submitted to the parties and objections were filed before the Council rendered its final decision. In light of the

remand plaintiff was accorded administrative due process in this respect.

■ Plaintiff also argues that the statutory provisions by which the Council may grant approval to a public utility to condemn specific property violates due process and equal protection because once a public utility is granted the authority to condemn, there is no limitation upon the time within which it may be required to proceed with condemnation.

The argument lacks merit. In the absence of explicit statutory strictures consistent with precepts of due process, these may be implied. *Cf. Juzek v. Hackensack Water Co., supra.* We are satisfied that under this condemnation statute, the condemning body may be compelled to institute condemnation proceedings within a reasonable time.

■ It is asserted by plaintiff that laches bars Hackensack from exercising the right of eminent domain. Plaintiff claims that the payment of taxes on the property during the five years in which there was no final decision in the condemnation proceedings resulted in prejudice to it. This contention must be rejected since there was no showing of tangible prejudice occasioned by the delay, especially in light of the fact that plaintiff is entitled to receive the current fair market value of its property, at the time of the taking.

■ ■ Plaintiff contends in a supplemental brief that the determinations of the Council, particularly its findings number three and four, were not based upon competent proof. We are satisfied, upon a full review of the record, that the determination of the Council was founded upon sufficient credible and competent evidence in the record as a whole, and should be sustained.

Finding Number 3 provides as follows:

3. All drainage from the aforesaid property is through a 15-inch pipe which terminates near the proposed southerly taking line. Results of analyses made on samples taken from the discharge of said pipe indicate, from the relatively high concentrations of detergent and phosphate, that domestic type wastes are finding their way into the drain. The number of coliform organisms is excessive at times.

Pollution by means of the shopping center's drainage system is reaching an open water course, draining into the reservoir. Observations indicate that the discharge from the 15-inch drain pipe reaches the reservoir, over a distance of some 500 feet during and after periods of rain. During dry periods the discharge goes into the ground.

The fourth finding made by the Council reads as follows:

4. The expansion of any subsurface disposal systems in the remaining lands of Ararat, Inc. would be aggravated by the expected rise in the groundwater level that would be caused by a full reservoir. Spills of fuel and chemicals on the parking area would pollute surface run-off.

Pursuant to its statutory authority under *N. J. S. A.* 58: 6–2, the Council was required in this case to determine the extent, if any, of plaintiff's land necessary to implement the plans which it had previously approved concerning the Hackensack reservoir so as to protect adequately that source of supply. The Council ultimately approved Hackensack's acquisition by eminent domain of all the property described in the proceedings, amounting to approximately 4.86 acres. That determination was based upon the Council's conclusion that those lands were necessary to protect the reservoir against pollution and to provide for its patrolling, maintenance and fencing. Moreover, acquisition of appellant's lands was concluded to be consistent "with the previously approved plans dealt with by this Council." This comported with the observation in *Juzek v. Hackensack Water Co., supra, viz*:

It is, therefore, apparent that the Water Council has the power and duty to protect the source of State water supply from contamination and to that end may require that a water company make adequate provision for the protection of a proposed reservoir from perimeter pollution. [48 *N. J.* at 310].

There was ample and persuasive evidence to justifying the findings made by the Council. In particular, Robert Gerber, the sanitary engineer in charge of watershed sanitation for Hackensack testified as to the necessity for the acquisition of

land for protective purposes. In part his opinion was based upon the results of a report, which was not itself introduced in evidence. Other tests were taken by Hackensack's employees, however, under the witness' supervision and were utilized by him to support his conclusion as to the extent of pollution draining to the reservoir from the nearby shopping center. Further support for the position of the water company was found in the testimony of other expert witnesses who agreed that modest marginal area, as sought by Hackensack, was necessary to prevent pollution.

In the context of all of the proofs before the Council we are unable to conclude that its determination was tainted to any significant degree by undue or exclusive reliance upon incompetent evidence. In light of the testimony in the record acknowledging the need of a marginal area to serve as a buffer strip, the existence of a shopping and office center with parking facilities on adjoining lands of plaintiff, drainage directed toward the reservoir, the incidence of pollution and the establishment of patrolling, fencing and maintenance operations, the Council's determination is soundly based upon the evidence. It is singularly appropriate that, since a high degree of agency expertise is involved, substantial deference be accorded the Council's decision. *Cf. Close v. Kordulak Bros.*, 44 *N. J.* 589 (1965).

For the foregoing reasons the decision of the Water Policy and Supply Council is affirmed.