599 P.2d 816

Susannah Worden WEBSTER,
Plaintiff-Appellee,

v.

The STATE of Arizona BOARD OF REGENTS, Defendant-Appellant.

Christina Worden WEBSTER,
Plaintiff-Appellee,

v.

The STATE of Arizona BOARD OF REGENTS, Defendant-Appellant.

No. 1 CA–CIV 4184.

Court of Appeals of Arizona, Division 1, Department C.

Aug. 14, 1979.

Wales & Plattner, P. C. by James Silhasek, Phoenix, for plaintiff-appellee.

Robert K. Corbin, Atty. Gen., John A. LaSota, Jr., Former Atty. Gen. by J. David Rich and Marilyn A. Pollard, Asst. Attys. Gen., Phoenix, for defendant-appellant.

HAIRE, Judge.

On this appeal from a judgment that ordered the Board of Regents to refund out-of-state tuition paid by appellees for the school year commencing August 30, 1975, the appellant board contends that the trial judge improperly substituted his judgment for that of the University Appeal Committee on Fee Status (appeal committee) in resolving the question of appellees' entitlement to classification as "in-state" students for tuition purposes.

Appellees are twin sisters who were admittedly domiciled in Ohio with their parents when they first enrolled at Arizona State University for the 1973 fall semester. After attending ASU during the fall 1973 and spring 1974 semesters, they returned to their home in Ohio for the summer of 1974. They alleged that when they returned to Arizona in August 1974 for the purpose of resuming their education, they did so with the intent of abandoning their domicile in Ohio and making Arizona their new domicile. They then enrolled at ASU for both the fall 1974 and the spring 1975 semesters. Thereafter, on June 29, 1975, they each filed a "Statement as to Residence" with the tuition classification officer at the university, seeking classification as in-state domiciliaries for tuition purposes beginning with the fall 1975 semester.

A.R.S. § 15–792A provides that no person shall be entitled to classification as an "in-state student" until he has been domiciled in this state for one year. The parties agree that in order to meet the one year domicile requirement, it was incumbent upon appellees to show that they had established domicile in Arizona no later than

August 30, 1974. For the purpose of determining in-state student status for tuition purposes, domicile is defined in A.R.S. § 15–791(2) as follows:

"'Domicile' means a person's true, fixed and permanent home and place of habitation. It is the place where he intends to remain, and to which he expects to return when he leaves without intending to establish a new domicile elsewhere."

We do not interpret this statutory definition as varying materially from the ordinary concept of domicile as established in Arizona case law, including the concept that proof of domicile resolves to essentially two elements: a showing of the required state of mind, combined with actual physical presence. *See Arizona Board of Regents v. Harper,* 108 Ariz. 223, 495 P.2d 453, 56 A.L.R.3d 627 (1972). However, Arizona decisional law has imposed a high burden of proof upon the student seeking a determination of domicile for tuition purposes. The student must prove by clear and convincing evidence that he has established the required domicile. This burden has been imposed because proof of domicile involves "basically subjective material which is conditioned by the advantage [of] the declarants." *Arizona Board of Regents v. Harper, supra,* 108 Ariz. at 229, 495 P.2d at 459. In addition, the student's burden is made even more difficult by the presumption created in A.R.S. § 15–793(1):

"Unless the contrary appears to the satisfaction of the registering authority of the community college or university at which a student is registering, it shall be presumed that:

"1. No emancipated person has established a domicile in this state while attending any educational institution in this state as a full-time student, as such sta-

tus is defined by the governing board of the community colleges or universities, in the absence of a clear demonstration to the contrary."

The tuition classification officer denied appellees' request for in-state student classification, and appellees appealed to the University Appeal Committee on Fee Status. After considering documentary evidence and appellees' oral testimony, the appeal committee likewise declined to grant in-state classification status to appellees. Appellees then timely appealed the committee's determination to the Maricopa County Superior Court, pursuant to the provisions of the Administrative Review Act, A.R.S. §§ 12–901 *et seq.*

■ Since a hearing had been held and a record kept of the proceedings before the appeal committee, review in the superior court was not *de novo,* but rather was on the record as established before the appeal committee. *See* A.R.S. § 12–910. Although the Administrative Review Act contains no statutory provision setting forth the standard to be employed by the superior court in conducting an agency review on the record, the appropriate standard has been fully developed by Arizona case law. The trial judge may not merely substitute his judgment for that of the administrative agency involved. Instead, before a reversal is justified, the trial court must find that the agency has acted arbitrarily, capriciously, or has abused its discretion. *See Arizona Department of Economic Security v. Lidback,* 26 Ariz.App. 143, 546 P.2d 1152 (1976).[1] In the resolution of factual issues, this standard requires a determination of whether there was substantial evidence to support the agency's decision. If two inconsistent factual conclusions could be supported by the record, then there is substan-

---

1. The decision under superior court review in *Lidback* was one that had been explicitly committed by statute to the discretion of the agency. The University Appeal Committee naturally does not have the same kind of discretion in resolving tuition status issues once the facts supporting a claim of in-state status become clear. Nevertheless, for reasons that include the greater expertise possessed by the commit-

tee as opposed to the superior court with respect to student residency matters, we believe the legislature intended that the superior court should afford a deference to the factual resolutions of the committee that is analogous to the deference required in *Lidback.* This would be particularly true where the trial judge has not allowed an expansion of the record as permitted in A.R.S. § 12–910A.

tial evidence to support an administrative decision that elects either conclusion. *Sundown Imports v. Arizona Department of Transportation,* 115 Ariz. 428, 565 P.2d 1289 (App.1977).

In *Arizona Board of Regents v. Harper, supra,* the Arizona Supreme Court also had before it questions concerning rulings made by a university appeal committee relating to in-state classification for tuition purposes. In that decision the court criticized the failure of the Board of Regents to set forth specific rules and guidelines governing the determination of domicile for tuition purposes. Immediately after the issuance of that decision, the Arizona legislature enacted the statutes previously referred to herein,[2] as well as § 15–794, which directed that the appellant board adopt appropriate guidelines for the determination of domicile questions.[3]

Pursuant to that statutory mandate, on September 23, 1972, the board adopted and promulgated guidelines entitled "Information and Guidelines for Determining Tuition Status". Section 4 of those guidelines is entitled "Evidence to be Considered in Classification Proceedings", and specifies that in determining domicile the committee may consider any relevant evidence, including, but not limited to, certain specified items.[4] In its brief filed in this Court the board points out in support of the appeal committee's decision that of all the items specified in Section 4 of the Guidelines, appellees can only demonstrate compliance with one of these items (the establishment of a bank account in January 1974 by one of the appellees) prior to August 30, 1974, the date when domicile must be deemed to have been established in order to successfully overturn the committee's decision.[5] The record does not support appellees' claim that prior to the 1974 registration they "rented and occupied an apartment in Tempe, Arizona having with them all of their personal possessions." Rather, the record shows that the rental of the apartment occurred in September of 1974, and only that they had all of their personal

---

**2.** Art. 1, Ch. 7.1, of Title 15, consisting of §§ 15–791 through 15–795; *see* 1972 *Ariz. Sess. Laws* Ch. 101, § 2.

**3.** A.R.S. § 15–794 reads as follows:

"The Arizona board of regents and state board of directors for community colleges shall adopt guidelines applicable to all institutions under their respective jurisdictions that will insure uniform criteria to aid the institutions in determining the tuition status of any student and that will establish uniform procedures for review of that status."

**4.** Section 4 of the Guidelines reads as follows:
"4. EVIDENCE TO BE CONSIDERED IN CLASSIFICATION PROCEEDINGS
"In determining domicile the classification officers or committee may consider any relevant evidence including but not limited to such items as the following:
"A. Proof of continuing presence in this state for twelve months which may be supplied by affidavits from those persons having knowledge of the facts.
"B. Evidence regarding filing of state income tax returns.
"C. Residence claimed on federal income tax returns of applicant and/or his parents.
"D. Voter registration.
"E. State in which motor vehicle is registered.
"F. Date of and state issuing driver's license.
"G. Place or prior attendance in educational institutions, including high schools, and

any information held by such schools affecting domicile.
"H. Source of support.
"I. Marital status and work record of registrant and spouse.
"J. State in which registered with Selective Service.
"K. Military records.
"L. Memberships in clubs, churches, and other organizations.
"M. Applications for loans, scholarships, grants-in-aid, or other such assistance.
"N. Ownership of real property.
"O. Long established bank accounts.
"P. Assured future permanent employment in Arizona.
"Q. All other material of whatever kind or source which may have a bearing on determining domicile.
"Each item presented for determination shall be subject to the classification officers' or committee's decision as to the weight to be given to it and such officers or committee shall determine the authenticity or truthfulness of any material or statements submitted as supportive evidence."

**5.** It is uncontested that appellees were physically present in Arizona on the pertinent date, as well as for the following year, except during the Christmas break in December of 1974.

property with them in Arizona by the date of the hearing, July 24, 1975. The other evidence relied upon by appellees includes their own subjective statements as to their intent to establish domicile when they returned to Arizona in August 1974, and evidence indicating that they registered to vote on September 16, 1974; obtained Arizona driver's licenses on October 31, 1974; and had opened checking accounts in January 1975. In the summer of 1975, prior to the hearing in this matter, appellees first became employed in Arizona, and although the record is unclear, there is some indication that at that time Arizona income taxes were being withheld from the paycheck of at least one of appellees. There is nothing in the record to indicate that either of appellees have either filed or paid Arizona income taxes, apart from the above.

■ The appellees view the appeal committee's decision as demonstrating a requirement by the committee that all physical manifestations of domicile (as applicable from the guidelines) must occur prior to the pertinent date for the initial establishment of domicile, here August 30, 1974. We agree that any such absolute requirement would be invalid, since generally the required intent to establish domicile may be shown by circumstantial evidence of a person's acts and conduct occurring after, as well as before, the date in question. *See* 28 C.J.S. *Domicile* § 17d(1) (1941) and authorities cited therein. We do not believe, however, that appellees accurately state the issue before the Court on this point. A more accurate statement of the issue is whether the appeal committee can be considered to be bound by the student's declaration that the required subjective intent was formed by a specific date when essentially all of the objective criteria relied upon in support of said intent occurred after the crucial date marking the commencement of the required one year domicile period. The distinction is particularly important in this case, since the date of the commencement of the one year period and the date of the formulation of the required intent appear to coincide. As stated by the Arizona Supreme Court in *Arizona Board of Regents v. Harper, supra:*

"To permit a student to announce his intention of becoming a permanent resident of Arizona on the day of his arrival; to accept his biased and self-serving statement as the whole truth; and to permit him to reinforce his statement by registering his car in this state, and securing a driver's license in this state, would simply place a premium on deception."

108 Ariz. at 227–8, 495 P.2d at 457–8.

■ As recognized by our courts, once physical presence has been established, the key factor in resolving the domicile issue is intent, and the existence of the requisite intent becomes a question of fact that is evidenced by the conduct of the person in question. *Bialac v. Bialac,* 95 Ariz. 86, 386 P.2d 852 (1963); *Clark v. Clark,* 71 Ariz. 194, 225 P.2d 486 (1950); *Jizmejian v. Jizmejian,* 16 Ariz.App. 270, 492 P.2d 1208 (1972). Here the appeal committee was the appropriate fact-determining body, and was entitled to judge the credibility of these student witnesses for that purpose, and this is of especial importance insofar as concerns subjective issues. In this connection we note that the record contains some unexplained inconsistencies created by appellees. First, in their written statements as to residence, appellees deny the receipt of any outside financial aid during the pertinent 12 month period, whereas their oral testimony at the hearing was to the effect that their entire tuition for the two semesters during this period was in fact paid by their parents in Ohio. Similarly, while appellees contend that they supported themselves during this period, the evidence also shows that they were unemployed during the entire period prior to the summer of 1975, and they made no showing of adequate savings for that purpose. Separate and apart from any relevance these factors may have in assessing the weight of objective manifestations of intent, the committee was entitled to take these factors into consideration in assessing appellees' credibility.

■ When full consideration is given to the entire factual situation alongside the

strong statutory presumption that in the absence of a clear demonstration to the contrary emancipated students such as appellees cannot establish domicile in this state for tuition purposes while attending the university as full time students, it cannot be said that there is no substantial evidence to support the appeal committee's refusal to grant in-state tuition status to appellees. Accordingly, the trial court erroneously found that the action of the appeal committee was arbitrary, capricious or constituted an abuse of discretion.

The trial court's judgment is reversed, and the matter is remanded for entry of judgment for the appellant.

EUBANK, P. J., and WREN, J., concur.